| | |
|---|---|
| Amanda Wiggins, | |
| *On behalf of herself and those similarly situated*, | Case No. |
| | Judge: |
| Plaintiffs, | |
| v. | Magistrate Judge: |
| PSI, LLC, Randy Dunlop, Doe Corp. 1-10, | Jury Demand Endorsed Hereon |
| Defendants. | |

## Class and Collective Action Complaint

### I. Introduction

1.     Amanda Wiggins, on behalf of herself and all similarly-situated individuals, brings this action against Defendants PSI, LLC, Randy Dunlop, and Doe Corporations 1-10, (collectively, "Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA").

2.     Defendants operate approximately 8 to 10 pizza stores in Eastern Tennessee.

3.     Defendants repeatedly and willfully violated the Fair Labor Standards Act by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

4.     All delivery drivers at the Defendants' stores, including Plaintiff, have been

subject to the same employment policies and practices, including policies and practices with respect to wages and reimbursement for out-of-pocket expenses.

5. All delivery drivers at the Defendants' stores, including Plaintiff, have been subject to the same employment policies and practices, including policies and practices with respect to wages and reimbursement for out-of-pocket expenses.

6. Plaintiff brings this action on behalf of herself and similarly situated current and former delivery drivers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

## II.     Jurisdiction and Venue

7. Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims and the doctrine of supplemental jurisdiction over state law claims pursuant to 29 U.S.C. § 1367.

8. Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district and a substantial part of the events giving rise to the claim herein occurred in this district.

## III.    Parties

**Plaintiff**

9. Plaintiff Amanda Wiggins resides in Dandridge, Tennessee. Further, at all times material herein, Plaintiff worked within the boundaries of the Eastern District of Tennessee.

10. Plaintiff was an "employee" of all of the Defendants as defined in the FLSA.

11. Plaintiff has given written consent to join this action.

**Defendants**

12.    Defendants have jointly employed Plaintiff and similarly situated delivery drivers at all times relevant.

13.    Each of the Defendants had substantial control over Plaintiff and similarly situated delivery drivers' working conditions, and over the unlawful policies and practices alleged herein.

14.    Defendants are part of a single integrated enterprise.

15.    At all relevant times, the stores shared common management and were centrally controlled and/or owned by PSI, LLC and Randy Dunlop.

16.    At all relevant times, all Defendants maintained control over labor relations at the PSI, LLC Domino's stores.

17.    During all relevant times, Defendants permitted employees to transfer or be shared by and between the stores without retraining.

18.    Defendants share or co-determine those matters governing the essential terms and conditions of employment for Plaintiff and similarly situated delivery drivers at the PSI, LLC Domino's stores.

19.    Defendants suffer or permit Plaintiff and other delivery drivers to work.

20.    Defendants have direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated delivery drivers, and also exercise that authority.

21.    During all relevant times, Defendants also exercised operational control over the delivery drivers at the PSI, LLC Domino's stores, including, but not limited to, control over recruiting and training of delivery drivers, compensation of delivery drivers, job duties of delivery drivers, reimbursements to delivery drivers, recruiting and training managers, design and layout

of the stores, sales and marketing programs, public relations programs, promotional services, appearance and conduct standards, inventory, and inventory controls.

**PSI, LLC**

22.     Defendant PSI, LLC. is a Tennessee corporation with its principal place of business in Athens, Tennessee.

23.     Randy Dunlop is the owner and operator of PSI, LLC.

24.     PSI, LLC. is the corporate entity that appears on Plaintiff's paystubs for work she completed for Defendants.

25.     PSI, LLC owns and operates approximately 8 to 10 Domino's stores in Eastern Tennessee.

26.     PSI, LLC operates out of its headquarters at 404 N. Jackson Street, Athens, Tennessee.

27.     PSI, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

28.     Upon information and belief, PSI, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

29.     PSI, LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

4

30. At all relevant times, PSI, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

31. PSI, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

32. At all relevant times, PSI, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

33. PSI, LLC 's gross revenue exceeds $500,000 per year.

**Randy Dunlop**

34. Randy Dunlop is the owner and operator of PSI, LLC since its inception.

35. Randy Dunlop is individually liable to PSI, LLC's delivery drivers under the definitions of "employer" set forth in the FLSA because he owns and operates PSI, LLC Domino's stores, serves as a manager of PSI, LLC Domino's stores, ultimately controls significant aspects of PSI, LLC's Domino's stores day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

36. At all relevant times, by virtue of his role as owner and operator of PSI, LLC Domino's stores, Randy Dunlop has had financial control over the operations at each of the PSI, LLC Domino's stores.

37. At all relevant times, by virtue of his role as owner and operator of PSI, LLC Domino's stores, Randy Dunlop has had a role in significant aspects of the PSI, LLC Domino's stores day to day operations.

5

38.     At all relevant times, by virtue of his role as owner and operator of PSI, LLC Domino's stores, Randy Dunlop has had control over PSI, LLC Domino's stores' pay policies.

39.     At all relevant times, by virtue of his role as owner and operator of PSI, LLC Domino's stores, Randy Dunlop has had power over personnel and payroll decisions at the PSI, LLC Domino's stores, including but not limited to influence of delivery driver pay.

40.     At all relevant times, by virtue of his role as owner and operator of PSI, LLC Domino's stores, Randy Dunlop has had the power to hire, fire and discipline employees, including delivery drivers at PSI, LLC Domino's stores.

41.     At all relevant times, by virtue of his role as owner and operator of PSI, LLC, Randy Dunlop has had the power to stop any illegal pay practices that harmed delivery drivers at the PSI, LLC Domino's stores.

42.     At all relevant times, by virtue of his role as owner and operator of PSI, LLC, Randy Dunlop has had the power to transfer the assets and liabilities of PSI, LLC.

43.     At all relevant times, by virtue of his role as owner and operator of PSI, LLC, Randy Dunlop has had the power to declare bankruptcy on behalf of PSI, LLC.

44.     At all relevant times, by virtue of his role as owner and operator of PSI, LLC, Randy Dunlop has had the power to enter into contracts on behalf of each of the PSI, LLC Domino's stores.

45.     At all relevant times, by virtue of his role as owner and operator of PSI, LLC, Randy Dunlop has had the power to close, shut down, and/or sell each of the PSI, LLC Domino's stores.

46.     At all relevant times, by virtue of his role as owner and operator of PSI, LLC, Randy Dunlop had authority over the overall direction of each of PSI, LLC Domino's stores and was ultimately responsible for their operations.

47.     The PSI, LLC Domino's stores function for Randy Dunlop's profit.

48.     Randy Dunlop has influence over how the PSI, LLC Domino's stores can run more profitably and efficiently.

**Doe Corporation 1-10**

49.     Upon information and belief, Defendants own and operate other corporate entities and/or limited liability companies that also qualify as Plaintiff's "employer" under the FLSA.

50.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## IV.    Facts

### Class-wide Factual Allegations

51.     During all relevant times, PSI, LLC operated approximately 8 to 10 Domino's Stores.

52.     The primary function of the PSI, LLC Domino's stores is to sell pizza and other food items to customers, whether they dine in, carry out, or have their food delivered.

53.     The PSI, LLC Domino's stores employ delivery drivers who are primarily responsible for delivering pizzas and other food items to customers' homes and workplaces.

54.     Plaintiff and the similarly situated persons Plaintiff seeks to represent are current and former delivery drivers employed by Defendants at the PSI, LLC Domino's stores.

55.     All delivery drivers employed at the PSI, LLC Domino's stores over the last three years have had essentially the same job duties—deliver pizza and other food items to customers.

56.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside the PSI, LLC Domino's stores building pizza boxes, cleaning, preparing pizza and other food items, and completing other duties inside the store as necessary.

57.     At all relevant times, Plaintiff and similarly situated delivery drivers have been an hourly wage rate at or close to minimum wage for the hours they worked for Defendants.

58.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

59.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

60.     Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, automobile financing, and incur cell phone and data charges all for the primary benefit of Defendants.

61.     The PSI, LLC Domino's stores do not keep track of their delivery drivers' actual expenses.

62.     The PSI, LLC Domino's stores do not reimburse delivery drivers for their actual expenses.

63.     The PSI, LLC Domino's stores do not reimburse delivery drivers at the IRS standard business mileage rate for all of the miles they drive completing deliveries.

64.     Until recently, Plaintiff and other similarly situated delivery drivers at the PSI, LLC Domino's stores were reimbursed a flat per delivery amount for the expenses they incurred. A few weeks ago, Defendants began reimbursing Plaintiff and other similarly situated delivery drivers at the PSI, LLC Domino's stores 32 cents per mile based on mileage calculated by the PULSE system.

65.     Plaintiff and similarly situated delivery drivers typically average at least four to five miles per round-trip delivery.

66.     Plaintiff and similarly situated delivery drivers typically make at least one delivery per hour.

67.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

a.  2017: 53.5 cents/mile
b.  2018: 54.5 cents/mile
c.  2019: 58 cents/mile
d.  2020: 57.5 cents/mile

68.     As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guarantee to them by the FLSA.

69.     At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at the PSI, LLC Domino's stores.

70.     All of Defendants' delivery drivers had similar experiences to that of Plaintiff. They were subject to the same reimbursement policy; received similar reimbursements; incurred

9

similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

71.     Regardless of the precise amount of the per-delivery reimbursement at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

72.     Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

73.     Defendants have willfully failed to pay federal minimum wage to Plaintiff and similarly situated delivery drivers at the PSI, LLC Domino's stores.

**Plaintiff's Individual Factual Allegations**

74.     Plaintiff worked at several PSI, LLC Domino's stores from approximately August 2018 until January 2020.

75.     Plaintiff worked or covered shifts at three of Defendants' PSI, LLC Domino's stores, and was subject to the same compensation and reimbursement policies described herein at all three locations.

76.     Plaintiff was paid minimum wage as an hourly rate.

77.     Plaintiff delivered pizza and other food items to Defendants' customers' homes and businesses.

78.     When she was not making deliveries, Plaintiff worked inside the store, completing tasks such as checking out carryout customers, cutting pizza, folding pizza boxes, cleaning up around the store, and taking care of other general tasks for the operation of the store.

79.     From August to approximately December 2019, Plaintiff was reimbursed a flat rate of $1.70 per delivery.

80.     In January 2020, the reimbursement changed to $.32 per mile based on mileage calculated by PULSE.  On occasion, Plaintiff drove more miles than PULSE calculated.

81.     Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

82.     Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, financing, insurance, cell phone service, GPS service, and other equipment necessary for delivery drivers to complete their job duties.

83.     Plaintiff purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile financing, automobile insurance, suffered automobile depreciation, and incur cell phone and data charges all for the primary benefit of Defendants.

84.     Defendants did not track the actual expenses incurred by Plaintiff.

85.     Defendants did not reimburse Plaintiff based on her actual delivery-related expenses.

86.     Plaintiff was not reimbursed at the IRS standard mileage rate for the miles she drove while completing deliveries.

87.     During Plaintiff's employment with Defendants, Defendants failed to adequately reimburse Plaintiff for automobile and other job-related expenses.

88.     Plaintiff regularly makes approximately one delivery per hour during the hours she works as a delivery driver.

89.     Plaintiff regularly drove approximately 4 to 5 miles round trip per delivery.

90.     When reimbursed on a per mile basis, Defendants' effective reimbursement rate for Plaintiff was $.32 per mile.

91.     In 2018, for example, the IRS business mileage reimbursement was $.545 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Thus in 2018, every mile driven on the job decreased her net wages by approximately $.23 mile.

92.     Thus, while making deliveries, Plaintiff consistently "kicked back" to Defendants approximately $1.15 per hour ($.23 x 5 miles per delivery).

93.     As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff minimum wage as required by law.

## Collective Action Allegations

94.     Plaintiff brings this action on behalf of herself and all similarly situated current and former delivery drivers employed at the PSI, LLC Domino's stores owned, operated, and controlled by Defendants, during the three years prior to the filing of this Collective Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

95.     At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

96.     Defendants' unlawful conduct is pursuant to a corporate policy or practice.

97.     Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked.

98.     Defendants are aware or should have been aware that federal law required them to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, automobile costs and gasoline for delivery drivers.

99.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

100.    This complaint is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

101.    The FLSA Collective members are readily identifiable and ascertainable.

102.    For the purpose of notice and other purposes related to this action, the FLSA Collective members' names and contact information are readily available from Defendants' records.

103.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## Rule 23 Class Action Allegations

104.    Plaintiff brings her Tennessee law claims under Federal Rule of Civil Procedure 23, on behalf of herself and a class of persons meeting the following requirements:

> All current and former delivery drivers employed by Defendants in the State of Tennessee since the date 3 years preceding the filing of Plaintiffs' original Complaint (the "Rule 23 Class").

105.    Any individual who is part of a certified class or collective action currently pending in any other court against Domino's is excluded from this definition, to the extent that the class/collective action covers the entire time period covered by this lawsuit. The individuals meeting this definition are the "Rule 23 Class."

106.    Also excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; any individual who is a member of a certified class action that is currently pending in any other court; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

107.    The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.

108.    The hours assigned and worked, the positions held, and the rates of pay and reimbursement for each Rule 23 Class Member are determinable from Defendants' records.

109.    For the purpose of notice and other purposes related to this action, the Rule 23 Class Members' names and contact information are readily available from Defendants.

110.    Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

111.    The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

112.    There are more than 50 Rule 23 Class members.

113.    Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

114.    Plaintiff and the Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to pay overtime, and failing to reimburse for expenses.

115.    Plaintiff and the Rule 23 Class have unjustly enriched Defendants by virtue of providing "tools of the trade" for Defendants' benefit, without being properly compensated for those tools.

116.    Plaintiff and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.  Defendants' corporate-wide policies and practices affected all Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

117.    Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

118.    By seeking to represent the interests of the Rule 23 Class members, Plaintiff is

exercising and intends to exercise her right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

119. Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

120. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

121. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Rule 23 Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Rule 23 Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in significant saving of these costs. The prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications with respect to the individual Rule 23 Class members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of

the Rule 23 Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

122.     Upon information and belief, current employees are often afraid to assert their rights out of fear of direct and indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

123.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

124.     Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

    a.  Whether Defendants paid Plaintiff and the Rule 23 Class members the proper minimum wage rate for all hours worked.

    b.  Whether Defendants required Plaintiff and the Rule 23 Class to provide and maintain safe, operable, and legally compliant automobiles to use in completing deliveries.

    c.  Whether Plaintiff and the Rule 23 Class incurred expenses for the benefit of Defendants in the course of completing deliveries.

    d.  Whether Defendants required Plaintiff and the Rule 23 Class to provide and maintain safe, operable, and legally compliant automobiles to use in completing deliveries.

e. Whether Defendants reimbursed Plaintiff and the Rule 23 Class for their actual expenses.

f. Whether Defendants maintained records of Plaintiff and the Rule 23 Class' actual expenses.

g. Whether Defendants reimbursed Plaintiff and the Rule 23 Class at the IRS standard business mileage rate for the miles they drove completing deliveries.

h. Whether Defendants were unjustly enriched by Plaintiff having provided and used his own vehicle for Defendants' benefit.

i. The nature and extent of class-wide injury and the measure of damages for those injuries.

125. In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

## V. Cause of Action

### <u>Count 1</u>
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

126. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

127. Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

128. Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

129. Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

18

130. By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

131. Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

132. As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

## Count 2
### Unjust Enrichment
### (On Behalf of Plaintiff and the Rule 23 Class)

133. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein

134. Plaintiff and the Rule 23 Class have conferred a benefit upon Defendants, namely, providing and maintaining "tools of the trade" for Defendants' benefit.

135. The "tools of the trade" include vehicles, insurance for those vehicles, and cellphones.

136. Defendants knew that Plaintiff and the Rule 23 Class conferred that benefit on Defendants.

137. As described above, Defendants, including Domino's, received benefits as a result of Plaintiff and the Rule 23 Class providing and maintain "tools of the trade."

138. The benefits include, but are not limited to, direct and indirect financial benefits like increased profits, increased ability to compete on the price of Defendants' products, and increased attractiveness of Domino's franchise opportunities.

139. Defendants did not compensate or under-compensated Plaintiff and the Rule 23 Class for these benefits.

19

140.     Accordingly, Defendants retention of these benefits under these circumstances would be unjust.

141.     As a result of Defendants having been unjustly enriched, Plaintiff and the Rule 23 Class are entitled to compensation for the value of the benefit Plaintiff and the Rule 23 Class conferred on Defendants.

**WHEREFORE**, Plaintiff Amanda Wiggins on behalf of herself and those similarly situated prays for the following relief:

A.     Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and her counsel to represent the collective action members.

B.     Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.     An award of prejudgment and post-judgment interest.

D.     An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

E.     An award of the value of the benefits for which Defendants were unjustly enriched on behalf of the Rule 23 Class.

F.     Leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court.

G.     A jury to try this cause.

H.     Such other legal and equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED this the 9th day of April, 2020.

**THE BURKHALTER LAW FIRM, P.C.**

s/D. Alexander Burkhalter, III
David A. Burkhalter II, TN BPR #004771
D. Alexander Burkhalter, III, TN BPR #033642
Zachary J. Burkhalter, TN BPR #035956
P.O. Box 2777
Knoxville, Tennessee 37901
Telephone: (865) 524-4974
Facsimile: (865) 524-0172
www.burkhalterlaw.com

and

/s/Phil Krzeski
Andrew P. Kimble (Ohio Bar # 0093172)*
Philip J. Krzeski (Ohio Bar # 0095713)*
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*

www.billerkimble.com

*\* Pro hac vice forthcoming*

**Counsel for Plaintiff and the Putative Class**

21

## JURY DEMAND

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/D. Alexander Burkhalter, III
D. Alexander Burkhalter III